**JOHNSON METAL PRODUCTS CO. et al. v. LUNDELL–ECKBERG MFG. CO., Inc.**

**No. 244.**

Circuit Court of Appeals, Second Circuit.

July 29, 1938.

D. L. Carlson, of Jamestown, N. Y. (Drury W. Cooper, of New York City, J. William Ellis, of Buffalo, N. Y., and Ernest D. Given, of New York City, of counsel), for defendant-appellant.

E. T. Bean, of Buffalo, N. Y. (H. C. Lord, of Erie, Pa., and W. J. Belknap, of Detroit, Mich., of counsel), for complainants-appellees.

Before MANTON, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

This appeal is concerned with two U. S. Patents to Johnson, No. 1,805,403 of which Claim 29, and No. 1,841,187 of which Claims 12 and 13 were held valid and infringed by the defendant. The subject matter of the patents has to do with windows of the kind having sashes or ventilators which are pivoted or hinged on the window frame as distinguished from windows in which the sashes or ventilators are mounted to slide up and down in the window frame. Windows having such pivoted or hinged sashes are known as casement windows. They have, as the art shows, been constructed in various ways of both wood and metal. Many of them have some mechanism comprising a member which can be pushed and pulled by hand to open and close the sashes. It is variously referred to as actuator, or operator, or stay bar.

The only claim of U. S. Patent No. 1,805,403 which was sustained by the trial judge is Claim 29 which reads as follows:

"29. A casement window comprising a skeleton metal frame, an out-swinging sash on the frame, a frame forming a stop for the sash, a window lock mounted on the frame and directly engaging an immediately adjacent part of the free edge of the sash, said lock having a handle, an actuator secured to the sash and mounted on the frame, said frame, sash, lock and actuator being adapted to form a standardized fabricated self-contained metal unit insertible into a window opening and with the lock and actuator operable from inside the window, and a screen having a frame insertible into and from the inside of a wall opening and mounted on the room face of the frame closely adjacent to the sash when closed, said lock and actuator being operable without opening the screen."

Claims held invalid in the court below, which separately contained the elements which appear together in Claim 29, are the following:

Claim 1 was for a casement window assembly unit having a single sash and Claim 2 a plurality of sashes, outswinging on the frame with a window lock mounted on the frame and operated from the inside of the window. The essentials of this structure were shown in the Wheeler installation and the Truscon casement windows illustrated in the record which were prior to Johnson's invention. It does not include a screen. Claim 9 was for a casement window assembly insertible as a unit into a wall opening, having an outswinging sash on the frame and having means within the opening for securing the sash from inside the frame. This claim provides for a screen having a frame insertible from inside the wall opening and devices on the frame securing the screen with relation to the frame and means. It was interpreted by the court as disclosing no actuator for opening and closing the sash without opening the screen. Even if this be so, the claim does include a window assembly with an outswinging sash on the frame, means inside the frame for securing the sash and a screen evidently not slidable but positioned on the inside face of the frame. Claim 18 likewise was for a casement window assembly unit having a metal frame insertible in the wall opening, an outswinging sash on the frame, a window lock mounted on the frame and operable from the inside by a handle, the lock and handle being within the opening when the unit is in place. It provides for a screen insertible from the inside of the wall opening and mounted on the room face of the frame closely adjacent to the sash when closed. It further provides that the handle, i. e., for the window lock, shall be operative without disturbing the screen. This, like Claim 9, may be thought to have disclosed no actuator and the same thing is true of Claims 24 and 25. Claim 21, held to be anticipated by the same prior art applicable to Claims 1 and 2, differs from 1 and 2 in that it describes the lock mounted on the frame as "directly engaging an immediately adjacent part of the free edge of the sash." It nowhere mentions a screen. Claim 27 was held invalid because not limited to a casement or side-hinged window and as thus construed anticipated by the Peveley Dairy Co. construction in which the window was hinged at the top. The screen was there attached directly to the frame and the actuator was inside the

screen. Claim 28, likewise held invalid, shows a metal frame and sash, lock, actuator operable from the room side of the frame, and a support for the actuator mounted solely on the frame. It does not provide for a screen. This, like Claims 1 and 2, was held void in view of the Wheeler installation. Claim 30 does not call for a casement window, i. e., one hinged on the side. It, like Claim 27, was held anticipated by the prior art and it was stated as to each of these claims that it would be invalid for lack of invention if not anticipated. After the decision disclaimers were filed as to all the claims except 29.

It appears from the above that Claims 27 and 30, held invalid and then disclaimed, disclosed everything in Claim 29 except a casement window. In other words, the inventive step, if any, covered by 29 consisted of employing in casement windows the features which did not serve as the basis for a valid patent where the window was hinged at top or bottom. Both where the sash was hinged at top or bottom and where it was hinged at the side, the other features were present, namely, a metal frame, a sash hinged on the frame, an actuator for the sash operable from the room side of the frame, a screen seated against the frame and adjacent to the sash when closed and an actuator operable without opening the screen. The advantages which Johnson claims for the structure recited in Claim 29 are that it permits the opening and shutting of the sash without having to open, close or remove the screen and that with his compact arrangement drapery need not be disturbed by opening and closing the screen. We are entirely clear that the real difference between the Griffin invention shown in his Patent No. 1,058,050 and the Johnson Patent consisted of the substitution by the latter of metal for wood. Metallic windows and screens had long been in use and the Peveley device showed an arrangement where the sash could be operated from the room side of the screen without disturbing the latter. The embodiment of the thought of Griffin in a metal frame undoubtedly involved good workmanship and skill, but did not, in our opinion, require more than a selection and arrangement of materials. In view of the Griffin Patent and the Wheeler and Peveley installations, we think that the achievement of Johnson required only routine effort of a man ordinarily skilled in the art rather than any inventive genius. The differences in the form of the lock and the actuator were in matters not specified in Claim 29 and not dependent upon unusual skill. Accordingly we hold Claim 29 void for lack of invention.

 Of claims 12 and 13 of U. S. Patent No. 1,841,187, held valid and infringed, Claim 13 reads as follows:

"A closure operating structure comprising an open metallic frame, a movable closure cooperatively engaging said frame, a support secured to said frame, an operating element actuating the movable closure and carried by the support, a screen against the frame and mounted on said support."

Claim 12 is the same as Claim 13 except that it is not limited to a metallic frame. The trial judge noted the fact that Truscon, Wheeler and Peveley showed steel casement windows and Griffin a wooden one in which the actuator had a supporting element seated either on the frame or on the window sill. He thought it a patentable improvement to mount the screen on the support of the actuator. Whether the screen be secured by clips or mounted on a metallic block that supports the actuator seems to us a detail of little significance and certainly one requiring no inventive thought.

Decree reversed with directions to dismiss the bill as to both patents.