## BENJAMIN ELECTRIC MFG. CO. v. BRIGHT LIGHT REFLECTOR CO., Inc., et al.

### No. 7190.

Circuit Court of Appeals, Seventh Circuit.

May 15, 1940.

Albert F. Mecklenburger, George L. Wilkinson, and Willard L. Pollard, all of Chicago, Ill., for appellant.

Emanuel R. Posnack, of New York City, and Charles Aaron and Lewis Schimberg, both of Chicago, Ill., for appellees.

Before TREANOR and KERNER, Circuit Judges, and LINDLEY, District Judge.

LINDLEY, District Judge.

Plaintiff appeals from a decree finding invalid claims 2, 3, 4, 5 and 6 of Patent to

Benjamin No. 1,787,032, issued December 30, 1930, upon application filed July 16, 1927, for a "fixture construction" and claims 1, 2 and 10 of Patent to Phillips No. 1,834,318, issued December 1, 1931, upon application filed March 28, 1928 for a "lighting fixture construction."

Benjamin's claim 2 is as follows: "A ceiling fixture construction comprising a unit to be secured to the ceiling and a second unit detachably secured to said first unit, said first unit comprising a wiring base and a connector member, said wiring base being provided with wiring terminals and. readily engageable and disengageable contacts, said second unit comprising a light-controlling member and a lamp socket carried and surrounded thereby, said light-controlling member being provided with a connector member rigid therewith and non-rotatable with respect thereto for engagement with said first connector member by a rotary movement, whereby the connection may be made by rotating the light-controlling member, said socket comprising lamp contacts and readily engageable and disengageable contacts for engagement with contacts on the wiring base, said connector members being distinct from and not electrically connected with said contact members."

Claim 3 has to do only with the combination of the elements comprising the lower unit in conjunction in use, however, with a ceiling unit. Claims 4, 5, and 6 differ from the one quoted only in what are deemed unimportant details of the various elements.

Phillips' claim 1 is as follows: "An electrical incandescent lamp fixture comprising in combination (1) a metallic housing and supporting cap member having two sets of lugs for effecting bayonet joints located on the inner periphery thereof, (2) a combination wiring base and connecting member, wiring terminals and metallic contacting members on said wiring base and grooves for forming a bayonet joint connection with one set of said lugs (3) a combination housing and reflector-supporting member comprising an incandescent lamp socket and flanges for forming a bayonet joint with the second set of aforesaid lugs, whereby when mechanical connection is established between said bayonet joints electrical connection is likewise established between said wiring base and socket."

Claims 2 and 10 do not substantially differ. The combination is said to comprise an improvement over Benjamin and includes the latter's six essential elements. The asserted improvement lies in the fact that Phillips' mechanical connector is of the bayonet type as compared with the shell screw form utilized by Benjamin and in the inclusion of a spring which, to insure close union of the contacts, presses against the wiring base when the units are assembled.

The fixture devices of the two patents are intended and adapted for service largely in industrial plants. Benjamin's efforts were directed to contrivance of a unit easily detachable for cleaning. In fixtures in which the reflector was not easily removable, it was necessary to loosen the set screws or other means of attachment. The operation was not facile and entailed danger of breakage and damage to machinery or furniture below the fixture from dropping water, if the reflector was cleaned while in place. Benjamin proposed, therefore, instead of a fixed reflector, one attached to a unit easily fitting into and contacting with the ceiling socket and just as readily detachable, and this he built with resulting commercial success.

He included in his combination device a ceiling unit, which comprises a wired base and a connecting means member which may be described, for the purpose of simplicity, as a ceiling socket. He next prescribed a lower unit, which consists of a light reflector or shade to which is attached, on its under side, a lamp socket, in which an electric light globe is screwed, and on its top, a connecting means member adapted to attach to the ceiling unit by means of a shell screw. Phillips added a spring to insure sufficient pressure to keep the electrical termini in contact when the units were assembled, and prescribed that the lower unit should fit into and be attached to the ceiling unit by a bayonet connection instead of by Benjamin's shell screw connection.

All elements of each combination were old, and the question is whether what Benjamin and Phillips did in combining such elements amounted to invention over the art as it existed at the time they made their individual excursions. Sockets, intended to receive and hold electric light globes, whether placed in the ceiling or

elsewhere, were old. Screw connections were old. Bayonet connections were old. And it would seem obvious that these two types of connecting and attaching means merely show that the mechanic had an option of choice in determining how he would connect the ceiling socket and the lighting element. Reflectors, obviously, are old.

Benjamin inserted between the old ceiling socket and the electric light globe, a new unit bearing the reflector, which in turn screwed into the ceiling socket with a rotary movement governed by the reflector "as a steering wheel," and carrying on its underside a socket to receive the globe. The insertion of this unit, as an easily detachable fixture, between the electric light globe and the ceiling socket, was the arrangement he made to produce facility, ease and speed of movement in operation.

The art was replete with socket electrical connections of the shell screw type and of the bayonet type. Many specific structures were described by earlier patentees. Thus, Muller employed both upper and lower units, the lower one screwing into the upper by the screw shell method. The wiring was substantially that adopted by Benjamin. The upper unit contained electric terminal contacts which were brought in touch with similar contacts in the lower unit in a readily engageable manner. Neither Muller nor Benjamin used a spring, and Muller shows no reflector; but it would seem obvious that invention does not lie in the addition of either. Benjamin knew that Muller's screw shell connector was clearly separate and distinct from the electrical contact members and this feature of construction he utilized in his combination. Benjamin could see also that by grasping and turning Muller's lower unit, facile connection could be obtained between the two contacts, and, as a mechanic, he must have appreciated that if a reflector was added, the leverage in turning would thereby become greater. Nutt, too, used a shell screw connector. Schaefer, as early as 1886, provided a combination which fitted into a socket in bayonet form. True, his globe was firmly fixed in this unit, but it certainly would not require invention to make the globe detachable. He inserted the unit in a screw socket. If he had added a reflector and altered his globe from one permanently fixed to one removable by unscrewing, he would have well-nigh accomplished everything done by Benjamin. Dean of 1915 was not greatly different from Schaefer. He attached a unit to a dash-board socket in bayonet fashion and attached the globe to his unit by another bayonet connection.

It seems obvious to us, therefore, in view of these specific references and other citations of the prior art, upon which we do not deem it necessary to comment, that Benjamin, exploring the problem and the prior art as he did, had suggested to him everything that went into his arrangement.

Trivial modifications of process or products do not show invention. Rosenberg et al. v. Carr Fastener, 2 Cir., 51 F.2d 1014. And even though no one previous patent or device employs all the mechanical features disclosed by the patentee, unless assembling of the features of the prior art constitutes invention, the patent is invalid. General Machinery Corp. v. Clearing Machine Corp., 7 Cir., 104 F.2d 553. Any patented device, all of the elements of which are old and each of which performs the same function taught by the prior art, fails as an invention. Higby v. A. B. T. Mfg. Co., 7 Cir., 93 F.2d 73; Boynton v. Chicago Hardware Foundry Co., 7 Cir., 77 F.2d 799; M. H. Detrick Co. v. Chicago Fire Brick Co., 7 Cir., 95 F.2d 455. We believe that Benjamin exercised mere mechanical skill.

All we have said applies to Phillips with equal force. He added a spring which was old and the desirability of which was obvious, and exercised his option of using a bayonet connection; in the exercise of this choice, as we have commented before, invention was not involved. The patents to Muller, Dean, Schaefer and Nutt are thought applicable to Phillips as readily as to Benjamin. Furthermore, a prior patent to Benjamin was of no slight educative value to Phillips. We are, therefore, forced to the same conclusion with regard to Phillips.

The ordinary presumption of validity is weakened by the fact that pertinent art appearing in this record was not considered by the examining officer.

Nor is the commercial success of plaintiff, even though not based upon a

fixture at variance with the patent, as contended by defendant (a question upon which we express no opinion), of sufficient strength to persuade us to a contrary decision.

The decree of the District Court is affirmed.