ELECTRIC VACUUM CLEANER CO., Inc., v. P. A. GEIER CO.

No. 8722.

Circuit Court of Appeals, Sixth Circuit.

March 6, 1941.

John F. Oberlin, of Cleveland, Ohio (Oberlin, Limbach & Day and Jno. F. Oberlin, all of Cleveland, Ohio, A. E. Bobst, of Schenectady, N. Y., and L. C. Spieth, of Cleveland, Ohio, on the brief), for appellant.

Harry Frease, of Canton, Ohio (Harry Frease, Joseph Frease, and E. R. Hamilton, all of Canton, Ohio, on the brief), for appellee.

Before ALLEN, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

Appellant, Electric Vacuum Cleaner Company, Inc., appeals from an interlocutory decree holding valid and infringed claims 2, 3 and 4 of United States Letters Patent reissue 17852, granted October 28, 1930, to the appellee, The P. A. Geier Company, as assignee of Olo C. Willis, patentee. The reissue patent was granted upon application filed July 31, 1930, Serial Number 472093. The original patent No. 1,753,458 was dated April 8, 1930, and granted upon an application filed August 8, 1924, Serial Number 730837. Both the original and reissue patents were for improvements on dust bag for suction cleaning apparatus.

The patentee claimed that prior to his invention, the dust bags of suction cleaners were almost universally attached to the frame of the cleaner at its lower end to the outlet from the electric fan and maintained in an inclined position by connecting its upper end to the handle of the cleaner and that the dust and debris settled to the bottom of the bag, and that no method had been devised for thoroughly emptying the bag without scattering the contents over the room and imposing a distasteful task on the operator.

The patentee also claimed that all prior dust bags of suction cleaners had a tendency to collapse at the mouth and were too small to readily permit expulsion of the dirt. He claimed to have overcome all these difficulties by providing an approximately air tight dust bag with a rectangular hinged, preferably metallic frame inclosed within the fabric mouth of the bag and adapted to collapse along two opposite sides when the mouth is closed, so as to permit a clip to be applied over the members of said frame and the edges of the mouth of the dust bag inclosing the frame. The frame will open fully upon removal of the clip for the purpose of discharging the contents.

The patentee claimed that his form of dust receptacle did not afford any place of lodgment for dirt; that the largest portion of the bag was presented at its opened mouth or discharge portion which could be closely pressed down upon paper or any other discharge surface to remove the bag

contents and to prevent the dispersion of the dust, germs and debris gathered by the cleaner. Claims 2, 3 and 4 in suit are found in the margin.[1]

The essential features of the invention are a square-shaped opening of the same area as the bag, with a stiffening member at the top to hold it in engagement with a surface while emptying, without the necessity of shaking the bag and distributing the dirt in the room, and when in operation the mouth is made approximately air-tight by the complementary sealing action of the clip and collapsible fabric covered frame.

Appellant insists that the improvement, if any, which appellee claims its assignor made in the art is no more than the direct product of craft, skill and knowledge proceeding out of the regular routine of industry. Appellee conversely argues that the problem which its assignor solved was one that pressed for solution and had evaded those skilled in the art from the inception of the use of suction cleaning apparatus and that the improvement accomplished by the patentee was the work of his brain and not his hand, and that he exercised a higher thought and brought into activity a different faculty than shown by those skilled in the art.

Since invention is seldom the sole work of a single inventor, however great a genius he may be, and since it is the product of the successive labors of innumerable men working at various times and often toward various objectives, the patent law lends protection to him who forges a link in the often complicated process that produces the finished invention if the link is devised by one who exercises a higher thought than the ordinary mechanic skilled in the art.

Every element of the combination covered by the claims in suit was concededly old and well-known at the date of the patent.

The clamp comprising the means for sealing is found as early as 1905 in Rogers' patent No. 807,579, which was a device for closure of bags subject to re-use, designed to resist weight load but not to be used in combination with other appliances where it would be subjected to air pressure. It was also found in Holmes No. 1,513,395 issued in 1924 which invention related to attachments for dust bags of suction cleaners, arranged in a manner to automatically open or spread at one end of the bag when the contents were to be removed. It is also found in Manahan patent No. 1,319,529 issued in 1919, which relates to the improvement of the fastening of garment bags by leaving the front flap free or unsecured so that contacting with the rear flap when folded over and held by a split sealing tube a tighter closure is made.

It is also found in British patent No. 2609 issued in 1872, which invention is described as an improved fastening for closing the mouths of sacks, bags and other like receptacles.

The bellows fold bag is also old to the art and is found in Patterson patent 1,504,-136 issued pursuant to an application filed October 4, 1923. It is also found in the Manahan patent, supra.

The art of using the hemmed fabric with a clip over it for closing purposes is taught in Rogers patent, supra. This device related to the closure of bags of all types by means of hemming the fabric and placing a clip over the hem. It is also taught in British patent No. 2609 issued in 1872 which provided for the use of a piece of sheet metal bent or drawn in the form of a trough or gutter to slide over the roping attached to the mouth of the sack or bag.

---

[1] Claim 2. Closure means for dust receptacles and the like, comprising a frame formed from hinged collapsible members folding within the compass of two opposing principal members of said frame, fabric engaging faces provided for the collapsible members of the frame, and means for sealing the frame members in approximately air tight relation when the members are in their collapsed relation.

3. Closure means for dust receptacles, comprising a fabric container having an open mouth and a frame within said mouth further comprising collapsible members hinged to and folded within the compass of two opposing principal members of said frame, said members being enclosed within the body of the fabric mouth, and means for sealing the mouth in approximately air tight relation when the frame is collapsed.

4. Closure means for dust receptacles, comprising a collapsible frame formed from collapsible members hinged to and folded within the compass of two opposing principal members of said frame, fabric material enclosing same frame members providing fabric faces for the same, and means for engaging certain of said fabric faces in approximately air tight sealing relation when the frame is in collapsed position.

The placing of collapsible metal frames within the mouth of dust bags of suction cleaners is taught by Holmes, supra, and in his patent he describes an attachment comprising an expansible member consisting of two flat springs pivotally connected together at the opposite ends preferably by means of hinges. The tension of the springs is such that the expansible member normally tends to expand them to the full length of their resiliency and maintain them in normal closed position by means of a clamp placed over the end of the bag, which serves to efficiently close it. The same use of collapsible hinged framed members is found in Butz' rejected application of October 12, 1921, and his appliance was used by the Birtman Electric Company in the manufacture of bags of suction cleaners. His appliance was a metal pantograph or four-sided rectangular frame, attached to the opening of the bag by sewing its edges over the metal frame.

Devini patent No. 1,049,821 issued January 7, 1913, describes a metallic bag holder formed from two hinged collapsible members folding within the compass of two opposing principal members of the frame.

Scheuber patent No. 466,262, issued December 29, 1891, describes an improvement in frames for pocket books, purses and bags which frame is formed from hinged collapsible members folding within the compass of two opposing principal members of said frame.

Appellee does not seriously question the fact that the references disclose the features relied on in its appliance. On the other hand appellant makes no showing that any one of the devices found in the prior art without modification could be combined and produce appellee's appliance.

Appellee insists there is nothing in the prior art which teaches, or suggests, a suction cleaner bag, the square open mouth of which equals its full diameter or periphery, and permits an easy emptying without scattering the contents and has a neat appearance, inflated or deflated, and also a maximum area of filtering material and which has a simple, reliable, double seal.

Appellee must rely upon structural differences for patentability since all the claims are for structure, the only new thing being the combination brought out by rearrangement, and only certain alterations were necessary to accomplish the desired result.

■ The idea of the patentee in putting the opening of the bag at the top and providing a simple device for fully opening and closing it with approximately air tight sealing was an excellent one and produced a useful and desired result, but the question for decision is, did his construction with reference to its own use in connection with an old and well-known appliance, embody a new device or any combination of new devices producing a new and different result. It is not sufficient that a thing is new and useful to entitle its creator to a patent. He must do more. He must discover it by either mental labor or intellectual creation, although it may be the result of mental accident. It cannot arise from knowledge common to all persons skilled in the art. The patentee must make some addition to the common stock of knowledge and not be merely the first to use in combination what was known before, without producing a new and different result. A patent for a machine, each part of which was in use before, but in which the combination of different parts is new and a new result is produced is good, because there is novelty in the combination, but here the case differs. Dust bags were an integral part of suction cleaners from their inception and their primary construction required material woven sufficiently close to prevent the escape of dust, but porous enough to allow the filtering of air. If air escape was prevented, its back pressure slowed the fan and if dust escaped, the machine lost its utility. The essential porosity of the cloth made it difficult to obtain rigidity for an opening to discharge the bag's contents, except where it was attached to the nozzle but this funnel-like opening made it undesirable for emptying.

The problem was to provide rigidity in the cloth for the purpose of a larger opening at the end of the bag opposite the nozzle attachment and to provide dust sealing when the machine was in operation. In order to accomplish this result, it was necessary to make the bag rigid at that point with an opening for emptying which could be easily and tightly closed to avoid the escape of dust when the machine was in operation.

The patentee accomplished these results by inclosing a collapsible, metallic frame in the hem of the bag at the top and by putting a sliding clip over the collapsed frame of sufficient strength to seal it.

■ Repositioning of parts to secure compactness and neatness is not invention (Lees-Bradner Company v. National Tool Company, 6 Cir., 52 F.2d 782), nor is mere

increase in the strength of a mechanical structure or the size of its opening. Cutler Mail Chute Company v. American Mailing D. Corp., 2 Cir., 247 F. 508; Lempco Products v. Timken Detroit Axle Company, 6 Cir., 110 F.2d 307.

■ The carrying forward of the original thought with a change only in form, proportions or degree and the doing of the same thing in substantially the same way with more satisfactory results is not invention, but amounts only to a more extended application of an earlier idea of another. Railroad Supply Company v. Elyria Iron & Steel Company, 244 U.S. 285, 292, 37 S.Ct. 502, 61 L.Ed. 1136. The commercial success which appellee attributes to its device and the fact that the industry has licensed its patent, do not establish invention. The most that may be said for the latter circumstance is that it is some evidence of belief on the part of the licensee that the claims may be patentable. Trade success and licensing of a patent are not synonymous terms in the patent law. Lack of novelty being clearly shown, acceptance of license under the circumstances of this case and some commercial success are without controlling weight. Toledo Pressed Steel Company v. Standard Parts, Inc., 307 U.S. 350, 357, 59 S.Ct. 897, 83 L.Ed. 1334; Rid-Jid Products Company v. Rich Pump & Ladder Company, 6 Cir., 103 F.2d 574.

■ A certain presumption in favor of the validity of a patent arises from the action of the patent office in granting the patent, but that presumption does not overcome the deliberate judgment of the court that there is no invention. Hollister v. Benedict & Burnham Manufacturing Company, 113 U.S. 59, 71, 5 S.Ct. 717, 28 L.Ed. 901. When, however, there is doubt as to the question of invention, the presumption arising from the issuance of a patent may avail to resolve the doubt in favor of its validity. Streator Cathedral Glass Company v. Wire Glass Company, 7 Cir., 97 F. 950; Hartford-Empire Company v. O'Bear-Nester Glass Company, 8 Cir., 39 F.2d 769; Michigan Central Railroad Company v. Consolidated Car Heating Company, 8 Cir., 67 F. 121.

■ Giving due consideration to the entire record and the contentions of the respective parties, we are of the opinion that the changes made by the patentee in the construction of dust bags for suction cleaners, as exemplified in the claims in suit, required no more than the exercise of ordinary mechanical skill and do not sanction the present patent. The decree is reversed and cause remanded, with directions to dismiss appellee's complaint.